UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARIAN J. BOUDREAU and RENEE BOUDREAU, Individually, as residents of South Boston, County of Suffolk, Commonwealth of Massachusetts, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ANGELINA'S RISTORANTE AND WINE BAR, INC., a company incorporated in the State of Maine, | ) ) ) ) | CIVIL ACTION CASE NO. |
| DAVID GIARUSSO, JR., Individually, as a resident of the Town of Wells, County Of York, State of Maine, | ) ) ) ) | |
| and | ) ) | |
| CARLOS PEREZ, JR., Individually, as a resident of the Town of Wells, County Of York, State of Maine, | ) ) ) ) | |
| Defendants, | ) | |

PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs Marian Boudreau and Renee Boudreau and complains against

Defendants Angelina's Ristorante and Wine Bar, Inc., David Giarusso, Jr. and Carlos Perez, Jr. as

follows:

THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Marian Boudreau, ("Marian") is an individual residing in South Boston,

Suffolk County, Commonwealth of Massachusetts.

2.      Plaintiff, Renee Boudreau, ("Renee") is an individual residing in South Boston,

Suffolk County, Commonwealth of Massachusetts.

1

3.      Defendant Angelina's Ristorante and Wine Bar Inc. (hereinafter "Angelina's"), is a restaurant operating at all pertinent times in the Town of Ogunquit, York County, State of Maine.

4.      Defendant, David Giarusso, Jr., is an individual residing in Town of Wells, York County, State of Maine.

5.      Defendant, Carlos Perez, Jr., is an individual residing in Town of Wells, York County, State of Maine.

<u>JURISDICTION</u>

6.      This Court has jurisdiction pursuant to 28 U.S.C.A § 1332 because the matter (damages) in controversary exceeds the sun of $75,000.00 and there is diversity of citizenship between the parties.

<u>VENUE</u>

7.      Venue is proper pursuant to 28.U.S.C.A. § 1391 because a substantial apart of the event complained of occurred within the District of Maine and because Angelina's operates as a business within the State of Maine, where the cause of action took place.

8.      This Court has the authority to consider the remaining causes of action under its supplemental jurisdiction to determine issues of state law which arise out of the same occurrence pursuant to 28 U.S.C.A. § 1367.

9.      There exists between the parties an actual controversy justiciable in nature.

<u>FACTS</u>

10.     On July 29, 2021, Marian and her daughter, Renee, dined at Angelina's Ristorante in Ogunquit, Maine.

11.     Marian and Renee were seated on the restaurant's "Garden Terrace," an outside tent-like area, next to an exit with a set of stairs leading down to the parking lot. Their waiter, Carlos, greeted them and took their order.

12.     Around 9:30 PM a group of older individuals who had been seated in the same area exited using the terrace's stairs. Marian and Renee watched as one of the individuals slipped on the first step and crashed down onto the second stair, landing hard on her rear end.

13.     Marian decided to inform the manager of the risk the stairs posed to his customers. She entered the restaurant and found her waiter, Carlos, standing at the hostess stand. She requested speaking to the manager. Carlos offered to help, but Marian explained she preferred to speak with the manager directly.

14.     After an extended period, the manager and owner, David, approached the table looking visibly bothered. Marian informed David about the customer falling on the steps. Having reported the incident to him, David's expression remained, indicating he was annoyed by her concern. David informed her that no one should be going down the stairs and that they were "blocked off." Marian turned back to the stairs to point out to him that the stairs were not blocked off. He then retorted that it was not his fault that customers moved the stanchion posts that were supposed to barricade the area. Marian suggested that he should inform his staff to keep an eye out for customers moving the barriers or buy some grip strips for the stairs. Still annoyed, David left the conversation by thanking Marian for her concern and reemphasized that no customer should be going down there.

15.     At this point, it was 10:00 PM, and the terrace was empty aside from one other table nearby. At that time, Marian and Renee were waiting for boxed-up leftovers to be brought back to their table.

16.     Suddenly, a visibly agitated David entered the terrace area and started abruptly closing the space by aggressively zippering down the corners of the tent. He continued to hang around in the tent area, despite the limited occupancy at that time.

17.     Carlos returned to the table with their dinner bill. David was still in the tent picking up the area. Having discussed their mutual South American descent earlier, Marian spoke to Carlos in Spanish. Marian expressed that she felt she had upset his boss and she had not meant to, she was just looking out for his best interest.

18.     Carlos said in English that it was not worth "beating a dead horse over."  He angrily handed her the bill and told her not to worry about leaving a tip. Confused but ready to leave, Marian signed the check and took her copy of the bill. Once the leftovers were brought out, Marian and Renee stood up to leave.

19.     At this point, David turned around to face them and began speaking in Spanish to Marian. He told her he understood Spanish and understood everything she had said to Carlos.

20.     David continued to berate Marian, using both Spanish and English, and called her derogatory names such as "slut" "bitch" and "cunt." He shouted, "fuck you, get the fuck out of my restaurant." Marian, startled by David's yelling, hustled out of the restaurant with Renee right behind her. The restaurant's employees froze, watching the scene unfold. The bartender, who was a blonde, petite female, stared at Marian with her mouth open. All the while David continued hollering, "you piece of shit" "you're worthless" "you fucking bitch" and other belittling words.

21.     Marian was scared and said nothing in response to the restaurant owner's words. Her goal was to get her and her daughter to a safe place. Trying to remain calm for Renee's sake, Marian turned to Renee and said, "this guy has some serious anger issues." The two nervously giggled as they hustled through the parking lot to their vehicle.

22.     Unfortunately, David followed them. He flung the door of the restaurant open and held his phone up as if videotaping them.  A younger waiter followed David out and appeared to be videotaping them as well. At this point, David was yelling and accusing Marian of not paying and instructing his staff to call the police.

23.     Marian and Renee continued to their vehicle. David and the younger waiter followed. Once inside the vehicle, Marian realized that a pick-up truck had pulled up behind them, blocking her car in. David then banged on her window and yelled "you didn't fucking pay your bill you bitch!" Marian, who had paid the bill, stepped out of her car and asked David to move the truck so that they could leave.

24.     David responded by hitting Marian across the right side of her face. Renee leaped out of the passenger seat and screamed at David. Staff members grabbed onto Renee to hold her back while she watched David hit her mother again. He then grabbed Marian and threw her to the pavement.

25.     At this point, staff members, who had witnessed the entire assault, restrained David, and Carlos came running out of the restaurant. Carlos grabbed onto Marian, who was still on the ground and instructed her to get into the car. David freed himself and threw one final slap across Marian's face, while Carlos was holding onto her. Marian was struck so hard that a dental bridge broke.

26.     Carlos again screamed at Marian to get into her car. Despite Carlos trying to restrain David, David swung his fist two more times, striking Renee once in the jaw.

27.     Marian grabbed David by the shirt, which tore as he pulled away and shoved her back to the ground. Three grown men grabbed onto and forcibly dragged David up the ramp towards the restaurant while David continued screaming insults at Marian. Amid the chaos, Renee

told Marian that David hit her on the jaw as well. Marian tried to confront David about hitting her daughter, but staff restrained her to the ground.

28.     Once back in the car, Marian and Renee realized they were still blocked in by the truck. Motivated by fear and instinct, Marian drove through the bushes surrounding the parking lot. The truck followed her, its bumper nearly hitting hers.

29.     Fearing for their lives, Marian kept driving. Soon thereafter, in Wells, Maine, several police cars came up behind her vehicle. As she pulled over, she noticed that the truck had pulled over behind the officers.

30.     Initially, no police officer approached her vehicle. Instead, Marian watched as the police officer spoke among themselves and with the driver of the truck. She noticed that both the Wells and Ogunquit police forces were present.

31.     A Wells police officer appeared at her window and told her to "just sit tight" and that an Ogunquit police officer would be right with her, ignoring her bruised face.

32.     Eventually, Officer Lloyd of the Ogunquit Police Department arrived.  He asked her what happened. Marian and Renee reported the assaults, recounting as many details as possible. Once finished, Officer Lloyd instructed them to go to the Wells Police Department to give a statement. Marian watched as the pick-up truck took off and headed back towards Ogunquit.

33.     Once at the station, Marian was placed in an interrogation room. She again told Officer Lloyd her story. Marian and Renee wrote statements. The officer informed them that they had had several complaints about David. He then took a few photos of her injuries on his phone. Throughout their discussion, the officer did not write any notes, and no one asked if they needed any medical assistance. Officer Llyod told her that he would file a report and that they would be in touch.

34.     Once they finished at the station, Marian and Renee went home. Marian began to process what had happened. She had scratches on her fingers and face. Renee had a mark on her wrist from where she was being held back by the staff member. Marian undressed to take a shower and saw that her knees were covered in scuff marks and bruises.

35.     The pain in her knee was so severe that Marian decided to go to the hospital. Renee accompanied her. At this point, it was close to 1:00 AM. By the time they arrived at the emergency room in Biddeford, Marian was overcome by emotion. She informed the intake nurse about what had happened to her. The nurse examined her knee, cleaned it, and put antiseptic on it. They took an X-ray and told her that she would be contacted by a doctor to discuss the results. Marian left the hospital with a knee brace and crutches. Marian and Renee got home around 6:00 AM that morning.

36.     This incident left Marian and Renee emotionally traumatized. Until Renee left for college, she chose to sleep in Marian's room so that neither had to be alone. Now, if alone, Marian cannot sleep unless her bedroom door is locked, and the light is left on. She is afraid of vehicles that drive by their house.

37.     As a result of being thrown to the ground by David, Marian has been physically injured. Her knee, which took most of the impact, constantly aches and causes her discomfort and instability while walking.

38.     Before the assault, Marian had been a dental assistant for more than twenty years. She never had a problem with the physical demands of her job. Following the assault, Marian has been unable to put pressure or bear weight on her right arm and/or shoulder which were also injured in the assault. Moreover, whether she sits or stands, her arm goes numb, and/or she feels a tingling sensation.  This is a result of damage to her cervical spine caused by the defendants.

39.     Renee, a college student at the University of Massachusetts, Dartmouth was to leave for school in August. It took Renee an extra month to leave as the events had increased her anxiety and depression which caused her to self-harm. She engages in therapy to treat the trauma and takes medication. Due to anxiety and trauma, Renee clenches her jaw to such an extent that she requires medical care.

40.     Once at school Renee isolated herself. Marian tried to convince her to come home for a weekend, but Renee, who was without a vehicle, kept putting off the visit. Renee told her mom that a male friend of hers was willing to bring her home, but she kept passing up on the opportunity. When Marian pressed her as to why she turned down the ride, Renee finally broke down and admitted that she was too scared to be alone in a car with a man. Her crippling anxiety caused by the assaults caused her to take time off from school, and she has not been able to return to college since.

41.     As a result of being verbally attacked and physically assaulted, Marian and Renee have suffered injuries, damages, and losses including but not limited to the following:

    a.  Significant and traumatic physical injury;

    b.  Past and future medical bills;

    c.  Past, present, and future economic damages in the form of medical expenses, lost income, lost opportunity, and out-of-pocket expenses;

    d.  Serious emotional distress;

    e.  Pain and suffering; and

    f.  Inconvenience, aggravation, and loss of enjoyment of life.

## COUNT I
(Assault & Battery)

42.     Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this complaint and incorporates them by reference herein.

43.     By hitting and physically attacking Marian, David intentionally or recklessly caused her to suffer harmful and/or offensive bodily contact.

44.     David also intentionally or recklessly hit Renee, causing her to suffer harmful and/or offensive bodily contact.

45.     As a result of David's harmful and/or offensive bodily contact, Marian and Renee have suffered, and continue to suffer, from significant physical, emotional, and psychological distress.

WHEREFORE, Plaintiffs respectfully request this Count to enter judgment against Defendant David Giarusso, Jr. on Count I and award them actual and punitive damages in an amount to be proven at trial, plus costs, interest, attorney fees, and any other relief the Court deems just and equitable.

### COUNT II
Assault & Battery
(Marian Boudreau v. Carlos Perez, Jr.)

46.     Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

47.     By physically grabbing Marian's body and demanding that she get into her vehicle while she was being attacked by David, Carlos acted intentionally or recklessly causing her to suffer harmful and/or offensive bodily contact.

48.     As a result of Carlos's harmful and/or offensive bodily contact, Marian suffered and continues to suffer significant harm, including physical pain and emotional distress.

WHEREFORE, Plaintiff Marian Boudreau respectfully requests that this Court enter judgment against Defendant Carlos Perez, Jr. on Count II and award her actual and punitive damages in an amount to be proven at trial, costs, interests, attorney fees, and any other relief the Court deems just and equitable.

COUNT III
Intentional Infliction of Emotional Distress
(Plaintiffs v. David Giarusso, Jr.)

49.    Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

50.    In verbally berating and physically assaulting Plaintiffs, David acted intentionally or recklessly inflicting severe emotional distress.

51.    As a restaurant owner, David knew – or should have known—that accosting and physically attacking female customers would cause them to suffer serious emotional harm.

52.    By verbally accosting and physically assaulting both Marian and Renee, David breached his duty of care owed to them as patrons at his business establishment and acted so outrageously as to exceed all possible bounds of decency.

53.    David's outrageous conduct caused the Plaintiffs to suffer significant emotional harm and distress.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendant David Giarusso, Jr. on Count III and award them actual and punitive damages in an amount to be proven at trial, plus costs, interests, attorney fees, and any other relief the Court deems just and equitable.

COUNT IV
Negligent Infliction of Emotional Distress
(Plaintiffs v. David Giarusso, Jr.)

54.      Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

55.      By violently attacking and accosting both Marian and Renee, David breached the duty of care that he owed them as invitees at his business establishment.

56.      As a direct and proximate result of David's negligence, Plaintiffs have suffered significant mental and emotional harm.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant David Giarusso, Jr. on Count IV and award them actual and punitive damages in an amount to be proven at trial, plus costs, interest, attorney fees, and any other relief the Court deems just and equitable.

COUNT V
Bystander Negligent Infliction of Emotional Distress
(Plaintiffs v. David Giarusso, Jr.)

57.      Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

58.      David violently attacked and accosted both Marian and Renee, who are related as mother and daughter.

59.      Both were near to and observing one another leading up to, during, and after the attack, and witnessed one another suffer the traumatic assaults and injuries caused by David.

60.      David breached the duty that he owed to Marian and Renee, who were both invitees to his business establishment.

61.      As a direct and proximate cause of David's negligence, both Renee and Marian suffered unbearable mental and emotional harm.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment against Defendant David Giarusso, Jr. on Count V and award them actual and punitive damages in an amount to be proven at trial, costs, interests, attorney fees, and any other relief the Court deems just and equitable.

## COUNT VI
### Negligence/Vicarious Liability
### (All Plaintiffs v. All Defendants)

62.     Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

63.     Defendant David Giarusso, Jr., owner and operator of Angelina's Restaurant, owed a duty of care to business invitees, including Marian and Renee Boudreau. *See Seiders v. Testa*, A.2d 933, 935 (Me. 1983).

64.     Incorporated into this duty, is a duty to ensure that invitees are not harmed by him, his employees, or his premises.

65.     David Giarusso, Jr. knew or should have known that physically assaulting and verbally berating Marian Boudreau and Renee Boudreau would cause significant harm to both of them.

66.     Upon information and belief, David Giarusso, Jr. habitually treats customers in a derogatory and rude manner.

67.     As a result of David Giarusso, Jr.'s negligence, both Marian and Renee Boudreau have suffered, and continue to suffer, significant harm.

68.     Defendant Carlos Perez, Jr. owed a duty to ensure that the customers he served were not harmed due to his negligence.

12

69.     Upon information and belief, at all times pertinent to these claims, Defendant Carlos Perez, Jr. was acting within the scope of his employment with Angelina's Ristorante. As such, Angelina's is vicariously liable for the negligent acts of its employees, as set forth above.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment against all Defendants on Count VI and award them actual and punitive damages in an amount to be proven at trial, costs, interests, attorney fees, and any other relief the Court deems just and equitable.

COUNT VII
Premises Liability
(Plaintiffs v. Angelina's)

70.     Plaintiffs reassert and reallege all allegations set forth in the preceding paragraphs of this Complaint and incorporates them herein by reference.

71.     Defendant Angelina's owed a duty to Plaintiffs and other invitees to keep the premise reasonably safe.

72.     Defendant Angelina violated its duty to Plaintiffs and others by failing to keep the premise safe from the reckless and/or intentional and/or tortious actions of its owner, employees, and agents, as set forth in paragraphs 18 through 25, above.

73.     As a direct and proximate result of Angelina's failure to keep the premises safe, Plaintiffs suffered injuries, damages, and losses as outlined in paragraphs 34 through 39, above.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment against Defendant Carlos Perez, Jr. on Count VII and award them actual and punitive damages in an amount to be proven at trial, costs, interests, attorney fees, and any other relief the Court deems just and equitable.

JURY DEMAND

74.     Trial by jury is demanded for each Count so triable.

Dated this 2nd day of November, 2022, at Portland, Maine.

Respectfully submitted,

_ /s/ Thomas F. Hallett_____
Thomas F. Hallett, Bar No. 3142
Attorney for Plaintiffs
HALLETT WHIPPLE WEYRENS
6 CITY CENTER, SUITE 208
P.O. BOX 7508
PORTLAND, ME 04112
PH: 207.775.4255
thallett@hww.law